UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Donald Strunk, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 10-12174-DJC |
| | ) |
| Odyssey Consulting Group, Ltd., Edward Giangrande, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**  August 10, 2011

### I.   Introduction

Plaintiff Donald Strunk ("Strunk") brings this action against Defendants Odyssey Consulting Group, Ltd. ("Odyssey") and Edward Giangrande ("Giangrande") alleging defamation and interference with contractual and advantageous relations in connection with Strunk's failure to obtain various employment opportunities at Odyssey and elsewhere. The United States filed a certification pursuant to 28 U.S.C. § 2679(d)(1) stating that Giangrande was acting within the scope of his employment for the United States at the time of Giangrande's alleged defamatory and injurious conduct while he was employed at the Defense Contract Management Agency ("DCMA"), a federal agency, and moved to substitute itself as the defendant on that basis. The government has moved to dismiss the complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6), 12(b)(1), or in the alternative, for summary judgment under Rule 56. For the reasons set forth below, the government's motion to dismiss is GRANTED and the remaining state law claims against

Giangrande, arising during his employment at Odyssey, and Odyssey are remanded to state court.

## II.   Burden of Proof and Standard of Review

Whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard. Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). In determining plausibility, the court should first identify and disregard conclusory allegations. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 129 S.Ct. at 1949-50). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 129 S.Ct. at 1950). The remaining "[n]on-conclusory factual allegations in the complaint must be then treated as true, even if seemingly incredible" and assessed to determine whether they, "'allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at 12 (quoting Iqbal, 129 S.Ct. at 1949, 1951). If they do, "the claim has facial plausibility." Id. (citing Iqbal, 129 S.Ct. at 1949).

## III.  Factual Background

### A.   Strunk's Employment History

For consideration of a motion to dismiss, the Court must accept the allegations in the complaint as true, id. at 12, and does so here. Strunk and Giangrande first met in 1984 when Giangrande worked for the DCMA, a federal agency. From 1984 through 2007, and since the summer of 2009, Giangrande worked for the DCMA (Compl. ¶¶ 6, 16, 22).[1] Strunk also worked

---

[1] For the purposes of this Memorandum and Order, the parties' filings referenced herein shall be abbreviated as follows:   Strunk's complaint ("Compl."); the government's motion to dismiss ("Gov. Mot. to Dismiss"); the government's memorandum in support of its motion to dismiss ("Gov. Memo"); Strunk's opposition to the government's motion to dismiss ("Pl. Opp. to Gov. Mot. to Dismiss); and docket ("D.").

there in various capacities from June 1986 through 2005. (Compl. ¶¶ 7-14). In June 1986, Strunk worked as a Property Administrator in the Property Management Section of the DCMA in Boston and was transferred to the Raytheon unit of the DCMA based in Burlington the following year. (Compl. ¶¶ 7, 8). In 1990, Strunk was assigned to the DCMA's contract department and then promoted to the DCMA's headquarters in Boston in 1999. (Compl. ¶¶ 9, 10). He subsequently became a program manager for the DCMA in April 2001. (Compl. ¶ 11). Seven months later, he volunteered to serve in the armed forces in Bosnia, but was not deployed and returned to work at the DCMA. (Compl. ¶¶ 12-13). In 2005, Strunk was promoted to the GS-13/14 position of Senior Staff Contracts Officer, Army Special Programs station at the Pentagon in Washington, D.C. (Compl. ¶ 14). He resigned two years later to be closer to his family located in the Boston area and accepted a GS-12 position as a program manager with the U.S. Air Force at the Hanscom Air Force base in Bedford, Massachusetts. (Compl. ¶ 15). By the time Strunk arrived in Hanscom, Giangrande had retired from the DCMA and was working as a Senior Contracting Specialist for Odyssey. (Compl. ¶ 16).

### B. Strunk's Complaint

Between 2007 and 2009 while employed in a GS-12 position at the Hanscom Air Force base, Strunk applied for 150 GS-13 or GS-14 positions with the U.S. Air Force at Hanscom for which he was qualified. (Compl. ¶¶ 15, 17). Strunk alleges that Giangrande, as an agent for Odyssey, defamed Strunk's work history to the Air Force hiring officials by falsely stating that he had been fired by the Pentagon, thereby preventing him from gaining other employment positions at Hanscom. (Compl. ¶ 18). After retiring from the U.S. government in January 2009, Strunk then applied for various positions with Odyssey, a private company, and its subcontractors for which he

was qualified. (Compl. ¶¶ 19, 20). Strunk alleges that he was not hired by Odyssey or its subcontractors because Giangrande, as Odyssey's agent, again defamed his work history preventing him from obtaining employment. (Compl. ¶ 20). During this time, Strunk had also applied for positions with the DCMA and the Department of Defense. (Compl. ¶ 21). Despite being qualified for such positions, Strunk alleges that he was not hired because Giangrande defamed his work history to hiring officials. (Compl. ¶ 21).

In the summer of 2009, the DCMA rehired Giangrande as a Senior Price Analyst (Compl. ¶ 22). In November 2009, Strunk was hired by Teledyne in its management program as a subcontractor to a company called Oasis, a contractor engaged at the Hanscom Air Force base. (Compl. ¶ 23). The next year, Teledyne allegedly informed Strunk that unless he resigned, he would be fired. (Compl. ¶ 24). Strunk alleges that Giangrande, while employed at DCMA, tortiously interfered with Strunk's employment with Teledyne causing his employment with Teledyne to be terminated. (Compl. ¶ 25).

## IV. Procedural History

Strunk filed the instant complaint in Middlesex Superior Court on November 16, 2010, alleging defamation and tortious interference with advantageous relations against all Defendants (Counts I and II) and tortious interference with contractual relations against Giangrande only (Count III). (D. 1). The government removed the case to this Court pursuant to 28 U.S.C. § 2679(d)(2). (D. 1). On December 17, 2010, the government filed a certification stating that Giangrande was acting within the scope of his employment for the United States (namely, the DCMA) at the time of the alleged conduct and moved to substitute itself as the defendant on that basis pursuant to 28 U.S.C. § 2679(d)(2). (D. 2). The United States substituted itself only with respect to the claims that

4

arose out of Giangrande's employment at the DCMA (Compl. ¶¶ 6, 16, 22), not when Giangrande was privately employed by Odyssey. (D. 19). The United States has now moved to dismiss pursuant to Rules 12(b)(6) and 12(b)(1), or in the alternative, for summary judgment under Rule 56. (D. 16). The Court heard oral argument on the motion (and other pending motions) on June 29, 2011.

## V.  Discussion

### A. The United States' Motion to Dismiss or, in the Alternative, for Summary Judgment and Strunk's Challenge to the United States' Certification

#### 1. Overview of Westfall Act Substitution

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, provides a "limited waiver of the United States' sovereign immunity from tort liability based upon the actions of its employees." Operation Rescue Nat'l v. United States, 975 F. Supp. 2d 92, 100 (D. Mass. 1997) (citing Block v. Neal, 460 U.S. 289, 294 (1983)). In 1988, Congress amended the FTCA to grant federal employees absolute immunity from common law tort suits committed when acting within the scope of their employment while allowing the suits to proceed against the federal government unless an exception under the FTCA applies. Davric Me. Corp. v. United States Postal Serv., 238 F.3d 58, 65 (1st Cir. 2001); see 28 U.S.C. §§ 2679(b)(1) and 2679(d). These amendments are commonly known as the Westfall Act ("the Act").[2] The Act preserves the United States' sovereign immunity from suits for defamation and other specified torts, exceptions to the waiver of immunity. See 28 U.S.C. § 2680(h). Thus, certain tort actions cannot be maintained against federal employees where the alleged tort was committed within the scope of employment. See 28 U.S.C. §§ 2679(b)(1)

---

[2]The amendments were a response to Westfall v. Erwin, 484 U.S. 292 (1988). See Davric, 238 F.3d at 65.

and 2679(d).

To grant a federal employee immunity from tort liability under the Act, the Attorney General files a certification to "certify that [the] federal employee named as a defendant in a civil case was 'acting within the scope of his office or employment at the time of the incident' that serves as the basis for a tort claim against that employee." Lyons v. Brown, 158 F.3d 605, 606 (1st Cir. 1998) (quoting 28 U.S.C. § 2679(d)(1)).[3] The Act further provides that upon such certification, the action "shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). That is, if the certification stands, the federal employee is immune from suit on claims arising from the certified conduct and is dismissed from the case, and the United States is substituted as the defendant with respect to those claims. Lyons, 158 F.3d at 606-07; Davric, 238 F.3d at 65 n. 9. Although the certification "shall conclusively establish scope of office or employment for purposes of removal," 28 U.S.C. § 2679(d)(2), it "does not conclusively establish that the United States should be substituted, but rather is provisional and subject to judicial review." Davric, 238 F.3d at 65 (citing Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995)).

Where a plaintiff challenges the certification, asserting that a defendant acted outside of the scope of his or her employment notwithstanding the certification to the contrary, it is the plaintiff who bears the burden to prove that the defendant acted outside the scope of his or her employment under state law. Davric, 238 F.3d at 65 (citing cases). If the plaintiff shows that the "employee was acting outside the scope of employment, as determined by the applicable state law, that employee

---

[3]The Attorney General has delegated this authority to the United States Attorneys. See 28 C.F.R. § 15.3(a).

may be re-substituted." Id. at 65 (citing Aversa v. United States, 99 F.3d 1200, 1208 (1st Cir. 1996)). A court reviews *de novo* the question whether the action in dispute was taken within the scope of the individual defendant's employment as certified in certifications by the government. Operation Rescue, 975 F. Supp. at 100 (citing cases).

### 2. Strunk's Challenge to the United States Substitution

Pursuant to 28 U.S.C. § 2679(d)(1), the United States moved to substitute itself for Giangrande as a defendant and attached to its motion the certification of the United States Attorney for this district certifying that Giangrande acted within his scope of employment during the times he was employed by the government, namely when he worked for the DCMA, and allegedly defamed Strunk and tortiously interfered with his advantageous and contractual relations. This Court granted the motion, substituted the United States as contemplated by the FTCA, and in effect, dismissed those claims against Giangrande.[4] Strunk did not object to the government's substitution until the government filed its motion to dismiss. Now that the government has moved to dismiss, he argues that the substitution of the United States is improper because Giangrande was not acting within the scope of his employment when he allegedly defamed Strunk or tortiously interfered with his advantageous and contractual relations. Strunk also requests that the Court allow the parties to engage in limited discovery to determine the scope of Giangrande's employment and hold an evidentiary hearing on the scope of employment issue. (Pl. Opp. to Gov. Mot. to Dismiss at 5).

To challenge the certification that Giangrande acted within the scope of his employment,

---

[4]As the First Circuit has noted, "[b]ecause the Supreme Court has held that 28 U.S.C. § 2679(b)(1) immunizes federal employees from suit even when an FTCA exception precludes recovery against the United States, [ ] substitution in [a] case effectively dismisses the claims." Davric, 238 F.3d at 65 n. 9 (citing cases).

7

Strunk has the burden to prove that under Massachusetts law, Giangrande was acting outside the scope of his employment at the time of the incidents out of which the claims arose. See, e.g., Davric, 238 F.3d at 65, 66 (citing cases); Rogers v. Mgmt Tech., Inc., 123 F.3d 34, 37 (1st Cir. 1997). Under Massachusetts law, the "conduct of an agent is within the scope of employment if it is of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer." Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991) (quoting Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986) (citations omitted)). With respect to the second and third prongs, only "[i]f an employee 'acts from purely personal motives . . . in no way connected with the employer's interest, [is] he considered in the ordinary case to have departed from his employment, and the master is not liable.'" Pinshaw v. Metro. Dist. Comm'n, 402 Mass. 687, 694-95 (1988) (quoting W. Prosser & W. Keeton, *Torts* 506 (5th ed. 1984)).

Here, Strunk has not met his burden to show that Giangrande acted outside the scope of his employment when he was a federal employee and engaged in the alleged unlawful conduct. Strunk's complaint contains no allegations about the content or location of the defaming statements and has advanced no basis to support that Giangrande was not acting within the scope of his employment in making these statements or tortiously interfering with Strunk's advantageous relationships or contractual relations. The United States does not contest any of the facts alleged in the complaint, but instead contends that Giangrande's actions, even as characterized in the complaint, arose while he was acting within the scope of his employment. Strunk offers no rebuttal other than stating in a conclusory fashion that Giangrande was acting outside of the scope of his employment and requesting that this Court allow limited discovery and hold an evidentiary hearing

8

to decide whether Giangrande was acting within the scope of his employment.

As to Strunk's request for an evidentiary hearing, if a " plaintiff's proffer 'so warrants' and the facts alleged 'are in controversy' a district court may hold evidentiary hearings to resolve scope-of-employment issues . . . ." Davric, 238 F.3d at 67 (citing Lyons, 158 F.3d at 610). Such is not the case here. The complaint merely states that Giangrande defamed Strunk about his work history to "hiring officials" each time Strunk applied for an employment position. In his opposition to the government's motion to dismiss, Strunk claims that "it was not part of [Giangrande's] duties to determine who worked for subcontractors for Oasis, a direct contractor with the Air Force," (Pl. Opp. to Gov. Memo at 5), but offers no factual support or evidence as to how, if at all, Giangrande interacted with Oasis while employed by the United States. Strunk also now contends, absent any factual support, that Giangrande had a "personal motive to malign" him and "private purpose interfering with [his] employment with Teledyne." (Pl. Opp. to Gov. Memo at 5). The complaint fails to allege that Giangrande had any personal motive to malign Strunk or point to any incident or relationship that may have created such motive or suggest any reason for it. See Davric, 238 F.3d at 67 n.10 (refusing to consider whether defendant may have been motivated by "personal animus" in defaming plaintiffs where the complaint failed to allege any personal motive to malign plaintiffs or any relationship or incident with the defendant that may have created such animus and where plaintiffs failed to argue that the defendant had a private purpose in defaming them independent from his duties as a federal employee so as to deem his actions outside the scope of employment or any reason for the defendant to have any animus toward plaintiffs apart from those duties). It is Strunk's burden to provide the Court with more than mere "unsupported conclusions or interpretations of law." Operation Rescue, 975 F. Supp. at 100 (citation omitted). Here, Strunk has

9

failed to show that an evidentiary hearing is warranted.

The Court is also not persuaded by Strunk's argument that limited discovery is warranted in this case. For "discovery of immunity-related facts to be warranted, the plaintiff must indicate what sort of facts he or she hopes to discover that would create a material factual dispute and could support a viable theory that the individual defendant was acting outside the scope of employment." Davric, 238 F.3d at 68. Strunk has failed to identify which facts, if discovered, would either undermine the determination that Giangrande was acting within the scope of his employment or lead to a viable theory that Giangrande was acting outside of the scope of employment when he was a federal employee. See Davric, 238 F.3d at 68 (rejecting plaintiff's argument that discovery was necessary where plaintiff did not state which facts, if discovered, would lead to a viable theory that defendant was acting outside the scope of employment). Accordingly, the substitution of the United States for Giangrande for those portions of Counts I through III that arose during his DCMA employment will stand.

If the conduct alleged in the complaint falls within the statutory exceptions of the FTCA, the Court lacks subject matter jurisdiction over the claims against the United States and as a result, the United States must be dismissed from the case. Here, Strunk seeks damages for defamation and tortious interference with advantageous relationships and contractual relations against the United States. (Compl. ¶¶ 26-28). Specifically, Strunk alleges that when he was employed by Teledyne from November 2009 to August 2010, the company decided to terminate his employment unless he resigned. (Compl. ¶¶ 23, 24). The complaint alleges that Giangrande, while employed by the DCMA, was responsible for Teledyne's actions. (Compl. ¶ 25). Even if Teledyne's actions which prompted Strunk's resignation was the result of the alleged defamation and tortious interference by

Giangrande during his employment with the government, the parties agree that such causes of action are precluded under the FTCA. See Gov. Memo at 3-12; Pl. Opp to Gov. Mot. to Dismiss at 3-4. The FTCA preserves the United States' sovereign immunity from suits for defamation and tortious interference under 28 U.S.C. § 2680(h). See, e.g., Davric, 238 F.3d at 64 (dismissing defamation and tortious interference claims against the Postal Service under FTCA's sovereign immunity); Moessmer v. United States, 760 F.2d 236, 237 (8th Cir. 1985) (affirming summary judgment in favor of the United States and holding that interference with precontractual relations falls within the § 1680(h) exemption); Chen v. United States, 854 F.2d 622, 628 n. 2 (2d Cir. 1988) (noting that "nearly every court that has addressed th[e] issue has held . . . [that] actions for tortious interference with business (i.e., prospective) advantage are barred as claims arising out of interference with contract rights" under 28 U.S.C. § 1680(h)) (internal quotation marks and citation omitted); Operation Rescue, 975 F. Supp. at 100 (noting that the "FTCA expressly preserves the United States' sovereign immunity from suits for defamation and other specified torts") (citing 28 U.S.C. § 2680(h)). As the First Circuit has explained, "Section 2680(h) of the FTCA embodies an understandable policy against compelling the public fisc to bear the costs of intentional torts committed by public employees." Davric, 238 F.3d at 64. Accordingly, the United States (as substituted for Giangrande) is immune to Strunk's claims and those claims are now dismissed. Strunk's claims against Giangrande for the time period during which he was employed by Odyssey, a non-governmental agency, however, still stand.

### B. Remand to State Court

In light of the Court's dismissal of the United States (as substituted for Giangrande) from this case, the only basis for this Court to exercise subject matter jurisdiction over the remaining state

law claims is to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367(c). The Court may raise the issue of subject matter jurisdiction *sua sponte*, Tarr v. Town of Rockport, 405 F. Supp. 2d 75, 78 (D. Mass. 2005) (citing cases); Fed. R. Civ. P. 12(h)(3) (providing that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"), and the Court's decision whether to remand the case to state court in this circumstance is discretionary. See Vera-Lazano v. Int'l Broadcasting, 50 F. 3d 67, 70 (1st Cir. 1995); Tarr, 405 F. Supp. 2d at 78. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction if the Court has dismissed all "claims over which it has original jurisdiction . . . ." See, e.g., Hasbun v. United States, No. 10-C-2000, 2010 WL 5150986, at * 3 (N.D. Ill. Dec. 10, 2010) (declining to exercise supplemental jurisdiction over plaintiffs' remaining state law claims where the United States was substituted as the defendant for a federal employee and was dismissed and remanding case to state court); Casey v. Guthrie, No. 09-951, 2010 WL 1657387, at *2-3 (S.D. Ill. Apr. 22, 2010) (declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over remaining state law claims and remanding matter to state court).

Accordingly, the Court declines to exercise jurisdiction over the remaining claims. The claim that gave rise to removal has been dismissed. Moreover, "'concerns of comity, judicial economy, convenience, fairness, and the like,'" Tarr, 405 F. Supp. 2d at 78 (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 247, 257 (1st Cir. 1996)), militate in favor of remand; all of the claims alleged in the complaint are state law claims (defamation and tortious interference with advantageous and contractual relations) and were originally brought by Strunk in state court. In addition, this case is in the early stages of litigation; discovery has yet to begin. The Court sees no unfairness in remanding the case at this time to state court where the action was originally brought.

Accordingly, the case is remanded to Middlesex Superior Court, the forum in which Strunk initially chose to bring this action.

## VI. Conclusion

For the foregoing reasons, the government's motion to dismiss is GRANTED and the remaining state law claims against Giangrande, arising during his employment at Odyssey, and Odyssey are remanded to state court.

**So ordered.**

/s/ Denise J. Casper  
United States District Judge